ceived in payment for the land. He has done neither. What is the rule of damages? None other than the sum paid, and interest. Besides, the hearing in damages is an equitable proceeding. *Wolcott* wished to prove, that, if he had fulfilled the first part of his covenant, and obtained the land, *Dwight* and *Ashmun* would have been worse off. than they would be by a total loss of the money paid. This would be strange equity. But the evidence in no sense was relevant to the case. Having failed of obtaining the title to the land, *Dwight* and *Ashmun* call on *Wolcott* to fulfil his engagement to refund the money paid. This being strictly the covenant, what has the value of the land to do with the action?

BY THE COURT,  AUSTIN, *Asst.* dissenting,

The judgment was affirmed.

## Bennet *v.* Howard.

In the Court below,

JAMES BENNETT, *Plaintiff;* NATHANIEL HOWARD, jun.
*Defendant.*

Where the defendant in error has a known place of residence out of the state, and an attorney within, service upon that attorney is not sufficient, without notice to the defendant pursuant to the rule of 1804.

THE defendant pleaded in abatement of this writ of error, " that the same had been no otherwise served on the " defendant, than by leaving a paper, purporting to be a true " copy thereof, with *Nathaniel Terry*, Esquire, of Hartford, " attorney to the defendant ; whereas the defendant being " described in said writ as *late of Windsor in the county of* " *Hartford, now of the city, county, and state of New-York*, a " true and attested copy thereof should have been left at " the place of abode of the said *Nathaniel Howard*, jun. in " said City of New-York, by an indifferent person, or a pro-" per officer."

To this plea, the plaintiff replied, " that at the time when " the judgment was recovered in the Superior Court, and at " the time when said service of this writ was made, by leaving " said copy with *Nathaniel Terry*, Esquire, he, said *Terry*, " was the attorney of the defendant."

To this replication the defendant demurred.

*Daggett*, and *N. Terry*, in support of the demurrer.

The service of process is *positivi juris*. We have but two statutes, which relate to this subject. One is the act regulating civil actions ; (a) but that clearly makes no provision for service upon the party out of the state, by leaving a copy with his attorney here. The other is the act concerning absconding debtors. (b) That, also, is wholly inapplicable to a case like the present ; the " attorney" mentioned therein, must be one who has *effects* of the principal in his hands ; the process is *sui generis ;* and is limited to a single class of cases bearing no resemblance to a writ of error. This service is obviously not conformable to the rule of 1804 ; for that rule requires a copy to be left with the party out of the state, not with his attorney within. (c)

*Ingersoll*, and *Bradley*, contra, insisted, that the *practice* had uniformly been, in cases like the present, to make service by leaving a copy with the attorney ; that this practice was considered as *settled*, when the rule of 1804 was made ; and that that rule was not made with reference to such cases. They contended also, that if the rule were applicable, it would not follow conclusively, that this service is bad ; for the rule goes no further than to say, that the service therein specified " will be deemed sufficient ;" it does not say, that no other service shall be made. The spirit of the rule is,

(a) *Stat.* 24, *edit.* 1796.
(b) *Ib.* 137.
(c) *Ante, vol.* 1. *p.* 330.

F f f

1807.

BENNET
*v.*
HOWARD.

you may omit, if you please, to leave a copy with the attorney ; the service *will be deemed sufficient*, if you leave one with the defendant out of the state.

BY THE COURT, unanimously, the replication was adjudged insufficient, and the process abated.

## Stoyel *v.* Westcott.

### In the Court below,

AMOS WESTCOTT, jun. *Plaintiff ;* WILLIAM CARDER, and ISAAC STOYEL, *Defendants.*

Tort and contract may not be joined in the same declaration ; but where the *gist* of the action is tort, the declaration will not be held ill, because it alleges the transaction out of which the tort arose to have been contract.

Where a party claims to have acted under a special authority, and makes that authority the foundation of his action, he must state it with reasonable precision and certainty.

THE declaration stated, that the plaintiff, on the 4th day of February, 1804, was legally deputed to serve a certain writ or process of attachment against *Stoyel,* in which *Job Smith* was plaintiff, demanding $ 800 damages, for a certain trespass alleged to have been committed by *Stoyel ;* that the writ was signed by *Thaddeus Learned,* Esq. a justice of the peace, and by him, and in his hand-writing, directed to the plaintiff, as an indifferent person ; that the plaintiff found *Stoyel* at *Carder's* house, on the evening of the same day, levied the writ on his body, took him as his prisoner, and was about proceeding to gaol with him, when it was proposed to the plaintiff, by the defendants, with a fraudulent intent to rescue *Stoyel* out of the plaintiff's custody, and that he might have an opportunity to depart out of the jurisdiction of the state of Connecticut, and under a pretence that it would be inconvenient to him to be taken to prison at that time, that *Carder* should take the charge and custody of him, and deliver him up to the plaintiff, on the succeeding 7th of February ; that the plaintiff, induced by the solicitations of the defendants, and relying upon their integrity and faithfulness, forbore to proceed with *Stoyel* to prison, and left him in the care and custody of *Carder ;* that *Carder*